UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN P. BAIRD; BRET KURIHARA; OS NEW MEXICO, LLC; BNS RD, LLC; SEAN SIMPSON; CHARLA SIMPSON; MARY JO MCHENRY; and K&L WELLNESS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>OSTEOSTRONG FRANCHISING, LLC; KYLE ZAGRODZKY; and JOHN JAQUISH,<br><br>Defendants. | No. 2:20-cv-02010-TLN-DMC<br><br>**ORDER** |

This matter is before the Court on Plaintiffs John P. Baird, Bret Kurihara, OS New Mexico, LLC, BNS RD, LLC, Sean Simpson, Charla Simpson, Mary Jo McHenry, and K&L Wellness, LLC's (collectively, "Plaintiffs") Motion for Preliminary Injunction.[1] (ECF No. 4.) Defendants OsteoStrong Franchising, LLC ("OsteoStrong") and Kyle Zagrodzky ("Zagrodzky") (collectively, "Defendants") have filed an opposition.[2] (ECF No. 9.) Plaintiffs have filed a reply.

---

[1] Plaintiffs originally filed their motion as a Motion for a Temporary Restraining Order but the Court, in its November 6, 2020 Order, denied the Motion for a Temporary Restraining Order and instead construes it as a Motion for Preliminary Injunction. (ECF No. 5.)

[2] This action involves three named Defendants. Defendant John Jaquish ("Jacquish") did not join in this opposition.

1

(ECF No. 12.) For the reasons set forth herein, Plaintiffs' motion is DENIED.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

OsteoStrong is a company that sells franchises for bone density improvement centers that utilize osteogenic loading equipment.[3] (ECF No. 1 at ¶ 22.) The equipment is branded as "Spectrum equipment" pursuant to a non-exclusive license from Performance Health Systems. (*Id.* at ¶¶ 19, 20.) OsteoStrong claims Spectrum equipment increases bone density, prevents osteoporosis, and "diagnose[s], cure[s], mitigate[s], treat[s], or prevent[s] medical diseases." (*Id.* at ¶¶ 16, 89.)

Plaintiffs are small business owners and franchisees of OsteoStrong centers throughout the United States. (ECF No. 4 at ¶¶ 1, 2.) Plaintiffs allege that OsteoStrong "intentionally omit[s] certain information, mak[es] affirmative misrepresentations, and intentionally convey[s] false information prior to executing the [franchise agreement] in an effort to induce potential franchisees into signing the agreement." (*Id.* at ¶ 35.) Specifically, Plaintiffs were harmed by Defendants' intentional omission of information regarding known bankruptcies and lawsuits in Defendants' Franchise Disclosure Document ("FDD"),[4] their affirmative misrepresentation of the patent rights and proprietary nature of OsteoStrong's equipment, and their intentional misrepresentation of their organizational relationship with motivational speaker Tony Robbins. (*Id.* at ¶¶ 36, 42–47, 48–58, 59–65.)

Plaintiffs further allege that OsteoStrong also "create[s] an impossibility of performance under the [franchise agreement] and negligently expos[es] franchisees to criminal and civil liability." (*Id.* at ¶ 35.) Specifically, OsteoStrong "violates [f]ederal law by marketing its system

---

[3]     "Osteogenic loading" exercises are defined in the Complaint as equipment "intended to measure forces on bone and muscle, and through the application of force, or loads, foster strengthening of both bone and muscle tissue." (ECF No. 1 at ¶ 17.)

[4]     As Plaintiffs note, in accordance with the Federal Trade Commission's Franchise Rule, 16 C.F.R. Parts 436 and 437, a franchisor is required to serve a complete and accurate FDD on each potential franchisee at least 14 days before entering into a Franchise Agreement ("FA") with the potential franchisee. (*Id.* at ¶ 23.) Plaintiffs also note that they received and relied upon FDDs issued by OsteoStrong. (*Id.* at ¶¶ 37–41.)

2

as a medical treatment," and further fails to comply with the Federal Food, Drug, and Cosmetic Act ("FDCA") and the U.S. Food and Drug Administration ("FDA") regulations for medical devices. (*Id.* at ¶¶ 67, 68–88.) Additionally, OsteoStrong "requires franchisees to use these same marketing materials and practices" and "may unilaterally terminate the FA with the [f]ranchisee for failure to do so." (*Id.* at ¶¶ 67, 110.) Plaintiffs also allege that the FAs require them to comply with "all applicable laws, regulations, codes, and ordinances including, without limitation, all governmental regulations relating to sales and marketing, which includes the FDA." (*Id.* at ¶ 113.) However, Plaintiffs believe that performance under the FA is impossible because OsteoStrong mandates the usage of marketing materials and practices that "[do] not comply with all applicable laws, regulations, codes and ordinances." (*Id.* at ¶ 114.) Plaintiffs assert that had they been aware the marketing materials and practices provided to them were not in compliance with local and federal laws, they would not have signed the FAs. (*Id.* at ¶ 120.)

On October 7, 2020, Plaintiffs filed a Complaint in this Court, alleging claims for: (1) common law fraud; (2) common law fraudulent inducement; (3) common law negligent misrepresentation by OsteoStrong; (4) common law negligent misrepresentation by Zagrodzky and Jaquish in their individual capacity; (5) unjust enrichment; (6) violations of the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200–17210); (7) violations of the California Corporations Code; (8) violations of 15 U.S.C. § 52; (9) violations of 35 U.S.C. § 292; (10) declaratory judgment that the franchise agreements are void as contracts for an illegal purpose or otherwise contrary to public policy; and (11) preliminary and permanent injunctive relief. (*See* ECF No. 1 at 36–50.)

On November 4, 2020, Plaintiffs filed the instant Motion for a Temporary Restraining Order. (*See* ECF Nos. 4.) In its November 5, 2020 Order, the Court denied Plaintiffs' Motion, construing it instead as a Motion for Preliminary Injunction. (*See* ECF No. 5.) The Court found the length of time between the first instance of alleged harm and Plaintiffs' motion contradicts Plaintiffs' allegation of immediate, irreparable injury. (ECF No. 5 at 5 (citing ECF No. 1 at 12 (noting the years when Plaintiffs "received and relied upon an FDD" as 2013, 2014, 2015, and 2017)).) The Court also noted Plaintiffs failed to make a showing of immediate, irreparable

injury because they have not pleaded in their Complaint or demonstrated in their motion any specific dates or times to signify that relief is urgently needed. (*Id.* at 6.) On December 3, 2020, Defendants filed an opposition. (ECF No. 9.) On December 10, 2020, Plaintiffs filed a reply. (ECF No. 12.)

## II. STANDARD OF LAW

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id*. A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. Simply put, plaintiffs must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in [p]laintiffs' favor in order to succeed in a request for preliminary injunction. *Id*. at 1134–35.

4

### III. ANALYSIS

Plaintiffs specifically request Defendants be enjoined from the following:

- Representing that their Spectrum equipment or the OsteoStrong system is able to diagnose, treat, or cure any medical condition or using claims like "reversing Osteoporosis" or "reversing type 2 Diabetes;"
- Representing that OsteoStrong owns any patented technology;
- Representing that the equipment is safe;
- Representing that Tony Robbins is a Partner in OsteoStrong;
- Ceasing to provide access to services and support as required under the Franchise Agreement and as established by regular practice for the operation of the franchises.

(ECF No. 4.)

In opposition to the instant motion, Defendants argue Plaintiffs cannot show immediate, irreparable harm for three reasons: (1) Plaintiffs' motion is now moot because they have permanently ceased operating their businesses, meaning Plaintiffs seek an injunction "based on alleged past wrongs only because they cannot now be wronged again"; (2) Plaintiffs do not allege any evidence to show actual harm has been threatened against them or is imminent, nor do they explain why injunctive relief is necessary after years of operating under the FAs; and (3) Defendants do not engage in the conduct Plaintiffs seek to enjoin. (ECF No. 9 at 10–15 (emphasis removed).)

In reply, Plaintiffs assert their businesses are not permanently closed, as Plaintiffs still "(1) have active agreements with OsteoStrong, (2) have active leases with landlords regarding franchise space, (3) have clientele, (4) own the equipment, and (5) have continuing liability for past and future conduct." (ECF No. 12 at 3–4.) Plaintiffs maintain there has been no rescission of the agreements, as they seek an injunction "based on continuing, present adverse harms." (*Id.* at 4–5.) Plaintiffs note the FDD and FA require them "to use marketing and advertising materials which contain misrepresentations and falsities regarding the patented nature of the OsteoStrong equipment, the degree of physical benefit consumers can receive from the equipment, the injury-free nature of the equipment, and the diagnostic, treatment, and curative effects of the equipment." (*Id.* at 6.) Plaintiffs maintain these are misrepresentations because OsteoStrong's

5

equipment has not been reviewed or approved as a medical device by the FDA and FDCA even though OsteoStrong markets the equipment as a medical device, OsteoStrong does not own the patent to the equipment in its facilities, and OsteoStrong's equipment is not injury-free since Plaintiffs and their clientele have experienced injuries. (*Id.*)

"An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1007 (C.D. Cal. 2007) (quoting *Optinrealbig.com LLC v. Ironport Sys.*, 323 F. Supp. 2d 1037, 1051 (N.D. Cal. 2004); *Public Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987)). Plaintiffs seeking injunctive relief must prove that irreparable harm is *likely*, not just possible, in its absence. *Winter*, 555 U.S. at 22; *Alliance for the Wild Rockies*, 632 F.3d at 1131. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy . . ." *Winter*, 555 U.S. at 22. Speculative injury is insufficient to demonstrate irreparable injury. *Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) (district court's finding that sublessee of commercial property would lose goodwill and "untold" customers was speculative, as it was not based on any factual allegations); *Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1172–73 (9th Cir. 2011) (district court abused its discretion in granting a preliminary injunction with only past examples of harm and no mention of "continuing, present adverse effects").

Here, the Court need not address all of the parties' arguments on imminent, irreparable injury because it finds Defendants' argument regarding Plaintiffs' failure to demonstrate actual harm persuasive. Despite the Court explicitly noting in its November 5, 2020 Order that Plaintiffs have not pleaded in their Complaint or demonstrated any specific dates or times to signify that relief is urgently needed (*see* ECF No. 5 at 5–6), Plaintiffs surprisingly once again fail to convince the Court that any concrete harm is forthcoming in their reply. (*See* ECF No. 12.) The crux of Plaintiffs' argument is that they are currently being forced to choose between continuing to abide by the FDD and FA and violating the law, or suffering the injury of obeying the law and losing their businesses. (*Id.* at 4.) However, Defendants note that "Plaintiffs do not

cite any action that has been taken against them individually or against OsteoStrong by the FDA" and that "[i]n OsteoStrong's entire existence, OsteoStrong has *never* received a complaint from the FDA." (ECF No. 9 at 13 (emphasis in original).)  The Court finds this point convincing as evidence of lack of harm.  Although Plaintiffs note that they and their clientele "have experienced injuries all while OsteoStrong actively fails to record, report, or publish these incidents of injury" (*see* ECF No. 12 at 6), Plaintiffs do not contend that OsteoStrong is required to do so through any law or contractual obligation.  Additionally, Plaintiffs do not provide any information about complaints from their clientele or employees threatening civil action against them, nor do they provide information about any impending criminal investigation or action.  Based on the foregoing, Plaintiffs' contention is that irreparable harm is *possible*, not likely, which is insufficient for injunctive relief.  *See Winter*, 555 U.S. at 22; *Alliance for the Wild Rockies*, 632 F.3d at 1131.  If there is evidence of actual imminent, irreparable harm in the future, Plaintiffs may refile their motion.

As stated in its November 6, 2020 Order, if the Court finds that Plaintiffs have not met their burden as to one *Winter* prong, then the Court need not address the remaining prongs as Plaintiffs have not met their burden for injunctive relief.  (ECF No. 5 at 5); *see also Alliance for the Wild Rockies*, 632 F.3d at 1135 (stating that the *Winter* test requires a plaintiff to "make a showing on all four prongs").  The Court once again finds Plaintiffs have failed to make a showing of immediate, irreparable injury and therefore declines to address the remaining *Winter* elements with respect to Plaintiffs' Motion for Preliminary Injunction.  (ECF No. 4.)

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for a Preliminary Injunction.  (ECF No. 4.)

IT IS SO ORDERED.

DATED: May 3, 2021

Troy L. Nunley
United States District Judge